UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DEMARCUS DOUGLAS | § | |
| | § | |
| v. | § | CIVIL NO. 4:19-CV-091-SDJ |
| | § | |
| WELLS FARGO BANK (TEXAS) BNA | § | |

## MEMORANDUM OPINION AND ORDER

Demarcus Douglas, a black male and former employee of Defendant Wells Fargo Bank (Texas) BNA ("Wells Fargo"), brought this case under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.* ("Title VII"), asserting claims for disparate treatment and creation of a hostile work environment. On March 11, 2020, the Court dismissed Douglas's disparate-treatment claim but allowed his hostile-work-environment claim to proceed. Discovery has now come to a close, and both parties have filed cross-motions for summary judgment on the remaining hostile-work-environment claim. (Dkt. #22, #27). Both parties have responded to each other's motion, (Dkt. #24, #28), and Wells Fargo further filed a reply brief, (Dkt. #29). Having considered the briefing, the record, and the governing law, the Court concludes that Wells Fargo's Motion for Summary Judgment, (Dkt. #27), should be **GRANTED** and Douglas's Motion for Partial Summary Judgment, (Dkt. #22), should be **DENIED**.

### I. BACKGROUND

Douglas's hostile-work-environment claim stems from race-based harassment Douglas experienced from a coworker while working as a Personal Banker at a Wells Fargo branch in Plano, Texas. Douglas alleges that the harassment, which led

1

Douglas to take a leave of absence from work, caused him physical and psychological symptoms of distress.

Douglas's career with Wells Fargo began when he was hired as a Phone Banker in July 2012. (Dkt. #28-1 at 13:15–17). Between the time that he was hired in 2012 and the time of the events relevant to this lawsuit in 2018, Douglas held a number of positions within Wells Fargo and worked at several locations throughout Texas. *See* (Dkt. #28-1 at 13–25).

In early 2018, Douglas moved to the Dallas area and was rehired as a Personal Banker at a Wells Fargo Plano branch. (Dkt. #28-1 at 24:23–25:4). In this position, Douglas reported directly to the branch manager, Fernando De La Paz. (Dkt. #28-1 at 25:8–10). Douglas maintains that, at some point after De La Paz hired Douglas, De La Paz stated that he had wanted to hire a Hispanic female for the position Douglas was hired for but that the job ultimately went to Douglas because Douglas interviewed so well. (Dkt. #28-1 at 65:1–17). Although this comment offended Douglas, he got along well with De La Paz, "didn't have any problems with [De La Paz]," and believes that De La Paz liked him as well. (Dkt. #28-1 at 26:23–27:1, 27:17–21). De La Paz never made any other statements that Douglas found offensive, nor did De La Paz ever insinuate that he preferred not to hire black employees.[1] (Dkt. #28-1 at 67:5–7, 67:15–18).

---

[1] Douglas's briefing states that, in addition to the comment about wanting to hire a Hispanic female, De La Paz told Douglas that "[De La Paz] had to hire an African American and no one wanted to do that." (Dkt. #28 at 3). The Court is aware of no evidence in the record indicating that De La Paz made such a statement. Further, Douglas's own deposition belies the contention. (Dkt. #28-1 at 67:15–18) (stating that, beyond informing Douglas that De La

Despite having a good relationship with De La Paz, Douglas encountered problems with another employee, service manager Billy Ansley, whose behavior towards Douglas forms the bulk of Douglas's hostile-work-environment claim. As service manager, Ansley directly oversaw the tellers at the branch. (Dkt. #28-1 at 25:14–18). Douglas and Ansley worked together, but Ansley was not Douglas's supervisor. Ansley did not hire Douglas, did not conduct Douglas's performance evaluations, and did not issue Douglas any disciplinary action, nor would he have had the authority to do so. (Dkt. #28-1 at 25:25–26:22); *see also* (Dkt. 27-1 at 1 ¶ 2).

Douglas points to four circumstances in the record where Ansley appears to have engaged in race-based harassment. The first instance occurred a few months before Douglas began his employment at the Plano branch. Another black employee, Angela King, was eating nuts in the breakroom, and Ansley, using a racial slur, commented that he formerly referred to nuts of that kind as "n***** toes." (Dkt. #28-1 at 52:16–23). Wells Fargo investigated and disciplined Ansley for this comment, imposing on Ansley a Performance Improvement Plan ("PIP") and warning Ansley that further disciplinary action would be taken if he did not correct his behavior. (Dkt. #27-1, Ex. B). As part of Ansley's PIP, Ansley was required to take anti-harassment and anti-discrimination trainings. (Dkt. #27-1, Ex. B).

Douglas did not hear Ansley's "n***** toes" comment to King as the incident occurred before Douglas began his employment in the Plano branch. Douglas first

---

Paz had wanted to hire a Hispanic female for Douglas's position, De La Paz never made any statement indicating that he preferred not to hire black people).

3

learned of the comment from King on June 18, 2018, roughly six months after Ansley made the comment and three days after Douglas took a leave of absence due to Ansley's harassment. (Dkt. #28-1 at 53:14–17).

The first instance of race-based harassment from Ansley towards Douglas occurred sometime prior to June 6, 2018. Douglas maintains that, while a group of black children were playing in the lobby of the bank, Ansley told Douglas to "control [his] cousins." (Dkt. #28-1 at 36:6–21). Douglas had no relation to the children; Ansley appears to have referred to them as Douglas's "cousins" and told Douglas to "control" them simply because they, like Douglas, were black.

Then, on June 6, 2018, in response to a similar situation where black children were playing with pens in the bank lobby, Ansley told Douglas to "control [his] kids" so that they would not "mess up the lobby." (Dkt. #28-1 at 36:12–25). Again, Douglas had no relation to the children in the lobby, and the sole basis for Ansley's remark appeared to be that both Douglas and the children were black. This incident was witnessed by De La Paz, and Douglas believes De La Paz counseled Ansley as a result. (Dkt. #28-1 at 40:3–12).

Approximately one week later, on June 14, 2018, while Douglas was in the vault room with Ansley and another co-worker, Ansley remarked that a new teller had just been hired and had passed her background check. (Dkt. #28-1 at 41:4–10). Douglas replied that his background check seemed to have taken much longer to complete. (Dkt. #28-1 at 41:13–14). Ansley laughingly told Douglas that his background check took longer because Douglas is black, which means that Wells

4

Fargo had to search the names "Marcus," "Demarcus," "Jamarcus," and "Lamarcus" to make sure they "had the right [black person]." (Dkt. #28-1 at 41:19–23). Douglas believed that Ansley was attempting to embarrass him and make a joke at his expense. (Dkt. #28-1 at 42:14–17).

The next morning, on June 15, 2018, Douglas informed De La Paz about Ansley's background-check comment. (Dkt. #28-1 at 57:11–14). De La Paz responded that the situation needed to be addressed immediately and instructed Douglas to call an Employee Relations Consultant ("ERC") to report Ansley's comments. (Dkt. #28-1 at 49:20–25). De La Paz also contacted ERC to report what Ansley had said to Douglas. (Dkt. #27-1, Ex. A at 1). ERC conducted a multi-week investigation of Ansley's race-based harassment towards Douglas. (Dkt. #27-1, Ex. A); (Dkt. #28-2). As part of its investigation, Wells Fargo interviewed De La Paz, Douglas, Ansley, and other employees from the Plano branch. (Dkt. #27-1, Ex. A). At the conclusion of the investigation, ERC recommended that Ansley be terminated from his position at Wells Fargo and rendered ineligible for rehire. (Dkt. #27-1, Ex. D). De La Paz agreed with this recommendation and terminated Ansley on July 31, 2018. (Dkt. #27-1, Ex. A at 11).

Following Douglas's reporting of Ansley's actions to ERC on June 15, 2018, Douglas was permitted to take a leave of absence and did not return to work until October. (Dkt. #28-1 at 89:1–3). While Douglas was on leave, he sought medical treatment for anxiety and depression. (Dkt. #28-1 at 78:18–20); (Dkt. #22-1 at 16–18).

Based on these events, Douglas filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Dkt. #22-2). Douglas checked the box for discrimination based on race and stated that the discrimination took place over a thirteen-day period between June 5 and June 18, 2018. (Dkt. #22-2 at 1). The EEOC dismissed Douglas's charge shortly after it was filed. (Dkt. #22-2 at 2).

Several months later, Douglas filed this action for racial discrimination under Title VII. The only remaining claim in this case is Douglas's claim that Wells Fargo maintained a hostile work environment based on Douglas's race. Douglas now moves for partial summary judgment, asking that the Court find Wells Fargo liable on his hostile-work-environment claim. Wells Fargo also requests summary judgment holding Wells Fargo not liable on Douglas's hostile-work-environment claim and dismissing the case.

## II. LEGAL STANDARD

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting FED. R. CIV. P. 56(a)). If the moving party presents a motion for summary judgment that is properly supported by evidence, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

Because Federal Rule of Civil Procedure 56 requires that there be no "genuine issue of *material* fact" to succeed on a motion for summary judgment, "the mere existence of *some* alleged factual dispute" is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (first emphasis omitted). A fact is "material" when, under the relevant substantive law, its resolution might govern the outcome of the suit. *Id.* at 248. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Hamilton*, 232 F.3d at 476 (citing *Anderson*, 477 U.S. at 248); *see also Steadman v. Tex. Rangers*, 179 F.3d 360, 366 (5th Cir. 1999) ("If the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, then there is no genuine issue for trial.").

"Courts consider the evidence in the light most favorable to the nonmovant, yet the nonmovant may not rely on mere allegations in the pleading; rather, the nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial." *Int'l Ass'n of Machinists & Aerospace Workers v. Compania Mexicana de Aviacion, S.A. de C.V.*, 199 F.3d 796, 798 (5th Cir. 2000). On cross-motions for summary judgment, the court must "review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th. Cir. 2001) (citing *Taylor v. Gregg*, 36 F.3d 453, 455 (5th Cir. 1994)). If, when considering the entire record, no rational jury could find for the nonmoving party, the movant is entitled to summary judgment. *Matsushita Elec.*

7

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 280, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

### III. Discussion

**A. Wells Fargo's Objections to Douglas's Summary-Judgment Evidence**

Among other pieces of evidence, Douglas's motion for partial summary judgment cites Douglas's own affidavit, (Dkt. #22-1), as well as physicians' notes, (Dkt. 22-1, Ex. 3, Ex. 4). Douglas's affidavit resembles his complaint and the factual background portion of his summary-judgment motion almost verbatim. Wells Fargo objects to the affidavit in its entirety, as well as, in the alternative, certain portions of the affidavit, on the grounds that it is vague, conclusory, and self-serving. Wells Fargo also objects to Douglas's physician notes on the grounds that they are unauthenticated. The Court will overrule both objections.

While some of the factual assertions in Douglas's affidavit are vague, Wells Fargo has since deposed Douglas, and Douglas's deposition provides much of the same information but with more context and in greater detail. Both parties rely on Douglas's deposition, rather than the affidavit, in their later briefing, and Wells Fargo appears to no longer challenge Douglas's factual assertions. *See* (Dkt. #27 at 2–8) (labeling the facts material to the summary-judgment dispute as "undisputed"). Accordingly, Wells Fargo's objections to Douglas's affidavit are moot, and the objection is OVERRULED.

Wells Fargo objects to two physician notes attached to Douglas's affidavit, (Dkt. 22-1, Ex. 3, Ex. 4), on the grounds that the notes are not properly authenticated. Under Federal Rule of Evidence 901(a), an item of evidence must be supported by sufficient evidence that the item is what the proponent says it is. Under Rule 901(b), one example of such authentication evidence is testimony from a witness with knowledge that the item is what it is claimed to be. Here, Douglas claims that the physician notes reflect the instructions and diagnoses given to Douglas by the physicians. Douglas further attests in his affidavit that the attached notes are true and correct copies of the instructions and diagnoses given him by the physicians. Because Douglas is a witness with knowledge testifying as to the authenticity of the physician notes, the notes have been properly authenticated. Wells Fargo's objection is OVERRULED.

**B. Wells Fargo Is Entitled to Summary Judgment on Douglas's Hostile-Work-Environment Claim.**

While the parties dispute whether the facts of this case give rise to liability under Title VII, the material facts regarding Douglas's time at Wells Fargo's Plano branch are largely undisputed. In its motion for summary judgment, Wells Fargo lists a series of facts, largely taken from Douglas's deposition, that Wells Fargo asserts are undisputed. (Dkt. #27 at 2–8). In response, Douglas agrees that "there are no genuine issues of material fact." (Dkt. #28 at 1).

To succeed on a hostile-work-environment claim under Title VII, the plaintiff must prove that he:

> (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012). Wells Fargo is entitled to summary judgment because, even assuming arguendo that there are triable issues of fact regarding the other elements, there is no genuine dispute that Wells Fargo took prompt remedial action upon learning of the harassment suffered by Douglas.

An employer can absolve itself of liability on a hostile-work-environment claim by promptly acting to remedy racial harassment in a manner that is reasonably calculated to end the harassment. *Johnson v. VT Halter Marine, Inc.*, 820 F.App'x 283, 285 (5th Cir. 2020) (quoting *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 615 (5th Cir. 1999)). While an employer will still be held liable if the plaintiff can show that the action taken was not reasonably calculated to end the harassment, an employer is not required to pursue the harshest possible remedial action. *Williams-Boldware v. Denton Cnty.*, 741 F.3d 635, 640 (5th Cir. 2014). Whether the employer's action was sufficiently calculated to end the harassment is often a fact-intensive inquiry. *Id.*

However, in some cases, an employer's actions constitute sufficient, prompt remedial action as a matter of law. *Id.* For example, an employer who takes allegations seriously, promptly initiates an investigation, and then immediately implements disciplinary measures as a result is considered to have taken prompt

remedial action. *Id.* (quoting *Carmon v. Lubrizol Corp.*, 17 F.3d 791, 795 (5th Cir. 1994) (per curiam)). And when an employer's actions successfully end the harassment, the actions will generally be considered sufficient. *See id.* (quoting *Skidmore*, 188 F.3d at 616) ("[I]n determining whether the employer's actions were remedial, we have considered whether the offending behavior in fact ceased.").

Here, the undisputed facts indicate that Wells Fargo took prompt remedial action reasonably calculated to end Ansley's racial harassment of Douglas. Douglas reported Ansley's background-check comments to De La Paz the next morning. De La Paz directed Douglas to immediately report the incident to Wells Fargo's ERC. De La Paz also reported the incident, along with the "control your kids" comment from the previous week, to ERC that day. Upon receiving the report, Wells Fargo allowed Douglas to take a leave of absence and immediately initiated a weeks-long investigation into Ansley's conduct towards Douglas. At the culmination of the investigation, Ansley was terminated and rendered ineligible for rehire. Douglas acknowledges that Wells Fargo took these steps. In fact, Douglas cites the fact that Wells Fargo took these incidents so seriously as evidence that the incidents created a serious, hostile work environment. *See* (Dkt. #28 at 6–7).

The course of action taken by Wells Fargo is precisely the course of action the Fifth Circuit has held constitutes prompt remedial action as a matter of law. Wells Fargo took Douglas's allegations seriously, immediately opened an investigation, and promptly took disciplinary measures as a result of the investigation. And, although an employer is not necessarily required to pursue the harshest disciplinary measure

11

available to it, Wells Fargo did. As a result of the investigation of Ansley's racial harassment towards Douglas, Wells Fargo fired Ansley. Additionally, Wells Fargo permitted Douglas to take a leave of absence after he reported Ansley's comments and while the investigation was pending. Between Douglas's leave of absence and Ansley's termination, from the day Douglas reported the harassment to ERC, Wells Fargo ensured that Douglas and Ansley never worked together again. The measures taken could not possibly have been more calculated to end the harassment.

Douglas hardly addresses in his summary-judgment briefing whether Wells Fargo took sufficient, prompt remedial action. Douglas's briefing offers the cursory statement that "[n]o action was taken" following Douglas's informing De La Paz of Ansley's background-check remarks. (Dkt. #28 at 5). But this statement is flatly contradicted by the undisputed facts in the record, which show that De La Paz instructed Douglas to report the remarks to ERC and then fired Ansley at the conclusion of ERC's investigation.

The only other argument offered by Douglas regarding Wells Fargo's remedial action is a brief statement that Wells Fargo failed to take the action "prior to [Douglas's] suffering injury." (Dkt. #28 at 1). This argument is puzzling. In order to take remedial action, there must be something to remedy. By definition, Wells Fargo could take remedial action only after harm occurred.[2] For this reason, the relevant

---

[2] To the extent that Douglas argues that Wells Fargo should have taken sufficient remedial action in response to Ansley's "n***** toes" comment to Angela King in order to prevent Ansley's later harassment of Douglas, Douglas's argument fails. While evidence of racial harassment suffered by others in the same protected class can be relevant in showing the existence of a hostile work environment, it must still be the case that the harassment altered the conditions of the plaintiff's employment. *See Hernandez*, 670 F.3d at 652–53. It is

12

precedent speaks of taking prompt remedial action *in response to* racial harassment in a manner that is reasonably calculated *to end* the harassment. *See, e.g.*, *Williams-Boldware*, 741 F.3d at 640. Douglas cites no authority to support his contention that, unless an employer prevents harassment from ever occurring, an employer has not taken sufficient remedial action.

Because there is no genuine dispute of material fact that Wells Fargo took prompt remedial action in response to Ansley's race-based harassment of Douglas,[3] Wells Fargo is entitled to summary judgment on Douglas's hostile-work-environment claim.

---

that conditions-altering harassment that an employer should attempt to remedy with prompt remedial action. Here, Ansley's "n***** toes" comment cannot be said to have contributed to altering the conditions of Douglas's employment because Douglas was not employed in Wells Fargo's Plano branch when the comment was made, and Douglas did not even learn of the comment until after he was already on leave from Wells Fargo. Thus, the remedial action taken by Wells Fargo in response to Ansley's "n***** toes" comment has no bearing on whether Wells Fargo took sufficient, prompt remedial action in response to the harassment suffered by Douglas.

[3] While Douglas includes in his complaint an allegation that De La Paz once made a statement that he had originally wanted to hire a Hispanic female for the position Douglas was hired for, Douglas's hostile-work-environment claim is centered on Ansley's conduct. For example, in his charge of discrimination filed with the EEOC, Douglas alleged that the discrimination occurred over a thirteen-day period between June 5, 2018, and June 18, 2018, which is the time period in which Ansley made the race-based, harassing remarks to Douglas. (Dkt. #8-1 at 2). And even resolving all inferences in favor of Douglas and concluding that De La Paz's expressed desire to hire a Hispanic woman was an expression of disdain for hiring black employees, the remark was not pervasive enough to constitute a hostile work environment because offhand comments and isolated incidents do not amount to altering the conditions of an employee's employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (citation omitted). Thus, in taking prompt remedial action reasonably calculated to end Ansley's race-based harassment of Douglas, Wells Fargo sufficiently remedied any hostile work environment suffered by Douglas.

13

## IV. Conclusion

For the foregoing reasons, it is **ORDERED** that Plaintiff Demarcus Douglas's Motion for Partial Summary Judgment, (Dkt. #22), is **DENIED** and Defendant Wells Fargo Banks (Texas) BNA's Motion for Summary Judgment, (Dkt. #27), is **GRANTED**. It is further **ORDERED** that Plaintiff Demarcus Douglas's claims are hereby **DISMISSED with prejudice**.

**So ORDERED and SIGNED this 29th day of July, 2021.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE